[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
Before the court is an application for temporary injunction, brought by the plaintiffs James W. Kelly and John P. Kelly[1]. They are both police officers in the City of New Haven. They seek a temporary injunction enjoining the defendants, City of New Haven, Melvin Wearing, the Chief of Police in New Haven, Tina Burgett, the City's Human Resources Director and the Board of Police Commissioners and each of its members [all collectively referred to as the "City" hereinafter], from going forward with promotions that they claim are illegal, in violation of the Charter of the City of New Haven.
The matter originally came to court on or about October 27, 2000, when all of the named plaintiffs sought an ex parte injunction to block the impending promotion of 18 sergeants off the lieutenant eligibility list. No ex parte relief was granted. When the matter was in court for a hearing, those promotions had already occurred. The parties entered into an agreement which provided that the City would give the plaintiffs three weeks notice of impending promotions. Such notice was given and the plaintiffs James W. Kelly and John P. Kelly have therefore brought their application for temporary injunction to the court. On May 20, 2002, a hearing was held on the plaintiff's application for temporary injunction.
The court finds the following facts from the evidence introduced at the hearing.
The City of New Haven, in its Charter and by ordinance, makes provision that the promotion of police officers (among other of its employees) be accomplished in accordance with civil service provisions. A civil service exam was held for the position of lieutenant on April 10, 2000 and May 17, 2000. The promotional list, that is the certified list of those who passed the exam was subsequently posted; it expires on June 20, 2002. Thereafter, in order for there to be further promotions to lieutenant, a new civil service exam would have to be held. The promotions off of the certified civil service exam are to be made by the Board of Police Commissioners, which receives the recommendations of the Chief of Police. CT Page 7464
On the exam at issue, the scores of the candidates were rounded to the nearest whole number. Exam scores above .5 were rounded up; exam scores at .5 and below were rounded down. A review of the actual scores, without rounding, discloses that there were no ties between candidates. Once the scores were rounded, there were numerous ties. It is not clear when this rounding practice commenced. The evidence discloses that there was no rounding in 1990 but that on a March, 1994 eligibility list, rounding had commenced. In practice, once the City rounds the scores, it treats all scores rounded to the same score as equal and treats all the candidates who have that score as being of one rank. For instance, in the exam at issue, the plaintiffs before the court each had their score rounded by the City to 83, as did several other candidates. The effect is that the plaintiffs were two among four candidates at rank 7. The certified eligibility list at issue has seventeen ranks among 36 candidates, none of whom actually achieved the same score on the civil service examination. The ranking runs from one to seventeen, such that, for example, the individual at rank one scored higher than those in succeeding ranks.
From the certified eligibility list, the City of New Haven Charter provides, "[w]henever said board shall have adopted rules relative to the appointment or promotion of any class of officials, no appointments or promotions within such class shall be made except from those applicantswith the three highest scores of those who shall be passed the examination with a score of at least seventy percentum and have received a certificate to that effect from said board. . . . (emphasis added)." (Sec. 160). The City has construed this provision to mean that it can select from the three highest ranks, explaining that each rank is a separate score.
This practice of selecting those who shall be promoted from the three highest ranks has meant that an individual who did not have one of the three highest scores can be selected for the promotion. It is this practice that is challenged by the plaintiffs in this application for temporary injunction. Presently, the Chief of Police, Melvin Wearing has announced his intention to submit for preemption the names of Sgt. Joseph Streeto and Sgt. Diane Langston.
As a result of previous rounds of promotions (with reference to Exhibit B) off of the eligibility roster, every candidate ranked above the two plaintiffs Kelly have been promoted, except Sgt. Edward Kendal. Sgt. Kendall has retired. Therefore, as the list presently stands the eligible candidates are in the following listed order and rank as assigned to them, plaintiff Sgt. James W. Kelly at rank 7, Plaintiff Sgt. James P. Kelly at rank 7, Sgt. Kevin J. Emery at rank 11, Sgt. Diane Street at CT Page 7465 rank 11 and Sgt. Joseph Streeto at rank 11.[2] The plaintiffs claim that the intended promotion of Streeto and Langston will violate the City Charter and therefore should be enjoined.
The Defendants assert that these intended promotions are in accord with a proper application of the Rule of Three under the City Charter. The relief that the plaintiffs are seeking is an injunction preventing the defendants from applying this construction of the Rule of Three to the next two proposed promotions. The Plaintiffs are aware that they are not entitled to a court order granting either of them a promotion. It is their goal to be fairly considered for promotion; This can only be achieved, they argue, under what they perceive to be a proper reading of the Charter. If the Rule of Three is meant to allow the three highest scoring individuals to be considered for promotion, then the plaintiffs argue that the first promotion must go to either one of them or Langston. If Langston is selected, as one would assume since her name is being submitted for promotion presently, then the second promotion must go to either one of the two Kelly plaintiffs or Kevin J. Emery. It is their prayer for relief that an injunction be issued to prevent the defendants from issuing promotions that do not fairly consider the three highest scoring individuals.
I. Law and Discussion
The elements that the plaintiffs must satisfy to be successful in an application for temporary injunction are well settled. "The party seeking injunctive relief must first demonstrate that: (1) he has no adequate legal remedy; (2) he would suffer irreparable injury absent a stay; (3) he is likely to prevail on the merits; and (4) the balance of the equities favors granting relief" Waterbury Teachers Assn. v. Freedom ofInformation Commission, 230 Conn. 441, 446, 645 A.2d 978 (1994).
The first two elements recited above are easily met by the plaintiffs. If injunctive relief is not granted, the defendants will in all likelihood proceed with their plans for the promotions of Langston and Streeto. It will mean that in considering one of these promotions, they will have had to embrace their notion that the Rule of Three means the selection from among the three highest ranks, not the three highest ranked individuals. Absent the court, at a later date, revoking promotions, an even more extreme injunctive remedy, there is no remedy for failure to being fairly considered, that is, being considered under the interpretation of the Rule of Three as the plaintiffs assert it should be construed. There is no adequate remedy for the plaintiffs to achieve this fair consideration for promotion other than to ask a court to order the defendants to do so. Money damages are not available. The prospective loss of not fairly being considered for promotion can not be compensated CT Page 7466 for in money terms. Therefore, if the plaintiffs are likely to prevail on the merits and if the equities favor the granting of relief, equitable relief would be the only remedy appropriate.
A. Likelihood of success on the merits
The plaintiffs and the defendants agree that the interpretation of the language of the Charter that provides, "no . . . promotions shall be made except from those applicants with the three highest scores" is the pivotal issue in this matter. The court must in construing this language consider its plain language.
"A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.) Bridgeport Firefighters Assn.v. City of Bridgeport, 48 Conn. App., 667, 670, (1998); see Murchison v.Civil Service Commission, 234 Conn. 35, 45, 660 A.2d 850 (1995). "In seeking to discern that intent, we look to the words of the statute itself . . ." (Internal quotation marks omitted.) Id. "When the words of a statute are clear and unambiguous, we assume that the words themselves express the legislature's intent and there is no need to look further for interpretive guidance . . . Where there is ambiguity in the statute, however, we ascertain the actual intent by looking to the language of the statute itself, its legislative history, the circumstances surrounding its enactment and its purpose"; Bridgeport Firefighters Assn. v. City ofBridgeport, supra, 48 Conn. App. 670; as well as "to the legislative policy it was designed to implement, and to its relationship to existing legislation . . . In order to determine the meaning of a statute, we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Citation omitted; internal quotation marks omitted.) Murchison v. Civil Service Commissionof the City of Waterbury, supra, 234 Conn. 45. When promotions in office or public situation are "regulated by law, all promotions must be made in accordance with that law . . . Such provisions exist where a merit system has been established in the municipal service . . . When such rules exist, promotions must be made in accordance with them, otherwise they are invalid." 3 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1990) § 12.131, p. 598 "The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." (Internal quotation marks omitted.) Gorman Construction Co., Inc. v. Planning Zoning Commission,35 Conn. App. 191, 195, 644 A.2d 964 (1994). The trial court reviews the commission's action "only to determine whether it was unreasonable, arbitrary or illegal." Schwartz v. Planning Zoning Commission,208 Conn. 146, 152, 543 A.2d 1339 (1988). In seeking injunctive relief, therefore, the plaintiff bears the burden of demonstrating that the CT Page 7467 town, by the actions of the board of police commissioners, acted improperly. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707,535 A.2d 799 (1988). International BOP v. Town of Windsor Locks,1998 Ct. Sup. 11153, 11158-9 (1998).
In considering the meaning of the language, the court must first consider it within the context of the statutory mandates. The Legislature has established the authority for the institution and application of civil service by municipalities. The enabling authority for the Rule of Three is found here:
Sec. 7414. Classified service; eligible list; promotion.
 The board shall, from the returns or reports of the tests, prepare a register or eligible list, for each grade or class of positions in the classified service, of the persons who attain such minimum mark as may be fixed by the board for any part of such test as fixed by the rules of such board and who are otherwise eligible.
 Such persons shall take rank as candidates upon such register or list in the order of their relative excellence as determined by test, without reference to priority of time of test. The board shall provide by its rules for promotions in such classified service on a basis of ascertained merit in service, seniority in service and special test. The board shall submit to the appointing power for each promotion the names of not more than three applicants having the highest rating. The method of testing and the rules governing the same and the method of certifying shall, as far as possible, be the same as provided for applicants for original appointment. (1949 Rev., 5. 876.) (Emphasis added.)
The statute contemplates a Rule of Three selecting the three individuals with the highest rating, having in order of their relative excellence as determined by the test. The Charter language speaks of the three highest scores. The City argues that the language the Charter, which replaced language that stated, "those applicants, not exceeding three, who shall stand highest on the list." particularly in light of discussions reflected in the minutes of the Charter Commission, reflects an intent to consider the scores as ranked, not the individual scores.
The court must consider this argument in the context of the exam CT Page 7468 process at the time. In 1991, when the Charter Revision Commission was meeting it does not appear that civil service examination results were rounded. The evidence presented discloses that in 1990 examination results were not rounded. The defendants offered into evidence an exhibit showing rounding occurred as early as 1994. Therefore, the court infers that when the Charter amendments were considered in 1991 (which eventually led to their passage and effective date some time in 1993), the exam results were not rounded. Therefore, at that time ranks were based on individual scores, which would much more rarely be the same, as they were published to the hundredth percentile (000.00).
This is not the first time that a trial court has considered the defendant's manner of interpreting and applying the Rule of Three, particularly as it applies to promotions in the Police Department. In the matter of Bombalicki v. Pastore, 2001 Ct. Sup. 3083 (2001), the trial court considered the Rule of Three and found that the City's interpretation that it could apply the Rule of Three to ranks, as opposed to individuals, could lead to absurd results. By application of the Rule of Three to ranks rather than individuals, where there are many individuals of a particular rank, the result might be that they all be passed over whether they be 2, 200 or 2000 in number at that rank. Further, it became clear on further inspection, that an individual who performed more poorly than many others may have a better prospect of being promoted if he is the only candidate in his rank. That is, when picking of three ranks, the appointing authority can pass over two ranks out of three regardless of the number in that rank. To `clear a rank out' so that the next rank may be considered, it is more likely that a rank with one individual would be picked if he were the only one in the rank.
Finally, under this system of considering ranks rather than individuals, the trial court in Bombalicki went on to consider the result that this would lead to: that in certain circumstances a candidate would be better situated for promotion if he did more poorly on an examination. This result undermines the very principles that are the bedrock of civil service competitive examinations as the basis for promotion. "It cannot be overemphasized that proper competitive examinations are the cornerstone upon which an effectve civil service system is built." Cassella v. Civil Service Commission, 202 Conn. 28,35, 519 A.2d 67 (1987). "The purpose of these laws is to ensure the appointment of personnel possessed of the qualifications which are necessary for a fit and intelligent discharge of duties pertaining to public office . . ." Resnick v. Civil Service Commission, 156 Conn. 28,31, 238 A.2d 391 (1968). The court concurs with the reasoning of the trial court in Bombalicki.
The defendants' interpretation of the language of the Charter does not CT Page 7469 lead to rational results when applied in very plausible instances. "[C]ompelling principles of statutory construction, however, require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. Sutton v. Lopes, 201 Conn. 115, 121,513 A.2d 139, cert. denied sub nom. McCarthy v. Lopes, 479 U.S. 964,107 S.Ct. 466, 93 L.Ed.2d 410 (1986); Narel v. Liburdi, 185 Conn. 562, 571,441 A.2d 177 (1981), cert. denied, 456 US. 928, 102 S.Ct. 1974,72 L.Ed.2d 443 (1982). We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. Peck v. Jacquemin, 196 Conn. 53, 63-64,491 A.2d 1043 (1985)." Turner v. Turner, 219 Conn. 703, 712-713,595 A.2d 297 (1991). It is also inconsistent with case law interpretation of the statute which authorizes the Rule of Three selection process as a part of civil service. "General Statutes Section 7-414 requires that a civil service position be filled from a list of the three candidates ("rule of three") who rank highest in open competitive examination for that position." International BOP, op cit at 13969.
The defendants argue that the plaintiffs' construction of the Rule of Three language unnecessarily interferes with the discretion of the appointing authority in the selection of individuals for promotion. They cite out of state cases for the proposition that competitive examinations by themselves are an insufficient way to determine an officer's fitness for promotion. It would appear that these jurisdictions have not placed as much faith as the State of Connecticut (as seen in statute and case law) in the civil service examination system as a means of assuring the public that its public employees are hired and promoted based upon their merit.
The second problem with the defendants' argument is it assumes that the plaintiffs' urge promotion in exam order without any consideration of the Rule of Three. The plaintiffs agree that the Rule of Three is provided for in the Charter and should be applied to the three highest scoring individuals; this provides the appointing authority sufficient discretion to consider other qualities besides the exam results for promotion. What this interpretation does accomplish is the prevention of the appointing authority from having the ability to virtually ignore exam results. The Rule of Three, which allows for selection from the three highest scoring individuals provides the appointing authority the discretion it seeks. "The rule of three grants a department head the discretion to award a promotional position to any one of the three most qualified candidates. The underlying rationale for the granting of such discretionary power is that the department head should have a limited say in deciding whom he must work with on a daily basis." Hartford v. Board of Mediation Arbitration, 211 Conn. 7, 17, 557 A.2d 1236 (1989). CT Page 7470
The defendants seek to promote as they desire, selecting from many within rounded scores' ranks, in three different ranks. It is this virtually unfettered discretion that was sought to be abolished with civil service examinations. Civil Service examinations "`secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination.'" Id., quoting Ziomek v. Bartimole,156 Conn. 604, 610, 244 A.2d 380 (1968).
"The civil service law provides for promotion in governmental employment according to merit and fitness ascertained by competitive examination. . . . The primary purpose of these laws is to guarantee that the meritorious secure jobs and to free public employees from the fear of personal and political reprisal. . . . These examinations not only protect the employees but also benefit the general public in that they tend to eradicate corruption as well as ensure that the persons with the necessary qualifications to discharge intelligently their duties pertaining to public office will do so." (Citations omitted.) Cassella v.Civil Service Commission, supra, 34-35." New Haven Firebird Soc'y v. Bd.of Fire Comm'rs, 32 Conn. App. 585, 592, 630 A.2d 131 (1993). The court finds that the defendants' interpretation of the Charter Rule of Three provision is improper and undermines the most fundamental public policy considerations underlying promotions based upon merit as discerned from civil service examinations.
The plaintiffs also urge the court to find that the defendants' practice of rounding the scores on the civil service exams is improper and should be enjoined. The defendants assert that rounding is a legitimate statistical method of grading. While rounding in itself would seem harmless several characteristics of it must be considered. First, it creates ties on the civil service examination where they do not in reality exist. Second, rounding results, occasionally, in the creation of a position or rank under the defendants' system that did not occur in the actual testing results. For instance, on exhibit B, rank 13 would not have existed without rounding. It also must be noted that rounding did not occur in 1990 but did in 1994 and forward, and the defendants can not point to any regulation, vote, or other authorizing act of the civil service commission or ordinance of the City which would authorize this change that brought in rounding. By itself, without the interpretation of Rule of Three as applying to ranks, it is not clear what effect rounding has or will have beyond creating ties. It would seem ties should still be broken with reference to the candidate who actually achieved a better result of the civil service exam.[3] Rounding with the defendants' interpretation of the Rule of Three discussed infra has produced a result CT Page 7471 where the appointing authority can select an individual who scored lower than others within the rounded rank.
Based on the evidence before the court on this application for temporary injunction, the court finds that it is likely that the plaintiffs will be successful on the merits of this action. The harm to the plaintiffs if injunctive relief is not issued is that they will lose the ability to be fairly considered for promotion in at least one of the two impending promotions under the existing eligibility list. The harm that might occur if injunctive relief is not granted is that the Police Department will function without officers that the defendant has deemed necessary to the proper operation of the police force. This problem is faced by the Department from time to time, in any case, and individual sergeants are given authority to act as a higher capacity officer for a shift. Indeed, Sgt. John Kelly is often called on to act as lieutenant[4]. The integrity of the promotional practices of the defendants, and their employees and the public's confidence in them is too important a value to sacrifice. The court finds that the equities weigh in favor of the issuance of an injunction.
The court orders:
The defendants are enjoined from promotions off the existing lieutenant eligibility list unless, utilizing the Rule of Three, they select from the top three scoring individuals. So ordered.
By the court,
 ___________________, J. Judge of the Superior Court